IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Charles Iseley,

    Plaintiff,

V.

JOHN TALABER, JEFFREY BEARD
WILLIAM STICKMAN, NEAL MECHLING,
PHS, WHS, ASG, JOANDELIE, EDWARD
SWIERCZEWSKI, CAROL SCIRE, DIANE
MANSON, DON SKUNDA, EUGENE
GINCHEREAU, ROBERT TRETINIK,
HERBIK, GARY GALLUCCI, JOHN DOE,
JEFFREY BOWDEN, JANE DOE, DAVID
YANAK, BUCKS COUNTY, DOC
COMMONWEALTH OF PENNSYLVANIA

    Defendants.

CIVIL ACTION NUMBER

1:CV 04-861

JURY TRIAL DEMANDED

ORIGINAL

## CIVIL COMPLAINT

This is a civil action filed by an incarcerated citizen in state custody pursuant to 42 U.S.C. 12101 et seq. ( Americans with Disabilities Act: ADA ), 29 U.S.C. sec. 701 et seq. ( Rehabilitation Act: RA ) and 42 U.S.C. secs. 1983, 1985 (2) (3) and 1986, seeking damages and declaratory, injunctive and other relief based on, inter alia, defendants' discrimination against him because of his disability and their violation of his right to adequate medical care for his serious illnes / disability and violation of other rights guaranteed by virtue of the laws of the United States of America and the Commonwealth of Pennsylvania.

JURISDICTION:

1. The court has jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. secs. 13.31 and 1343 (a) (3) (4) and has jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. sec. 1367. The court is authorized to provide declaratory and other relief pursuant to 28 U.S.C. secs. 2201 and 2202.

VENUE:

2. The Middle District of Pennsylvania is an appropriate venue under 28 U.S.C. sec. 1391

because several defendants reside or operate in that district.

PLAINTIFF:

    3. Plaintiff, Charles Iseley, is an incarcerated citizen currently in the custody of the Pennsylvania Department of Corrections ( DOC ).
    4. Plaintiff has been diagnosed by physicians as having a symptomatic and active chronic hepatitis C / cirrhosis infection ( HCV ) which is a serious and life- threatening illness and disability.

DEFENDANTS:

    5. Jeffrey Beard is a health care provider, licensed psychologist and secretary of the DOC and had a duty of care to plaintiff as delineated in paragraph 29.
    6. John Talaber is a health care provider, licensed attorney and an assistant counsel for the DOC and had a duty of care to plaintiff as delineated in paragraph 29.
    7. Karen Diaz is a health care provider, licensed attorney and assistant district attorney of Bucks County, Pennsylvania and had a duty of care to plaintiff as delineated in paragraph 29.
    8. William Stickman was a health care provider and superintendent of the state correctional institution at Pittsburgh ( SCIP ) and had a duty of care to plaintiff as delineated in paragraph 29.
    9. Neal Mechling is a health care provider and superintendent of the state correctional at Fayette ( SCIF ) and had a duty of care to plaintiff as delineated in paragraph 29.
    10. Joan Delie was a health care provider at SCIP, is a licensed registered nurse and was the health care administrator at SCIP and had a duty of care to plaintiff as delineated in paragraph 29.
    11. Carol Scire was a health care provider at SCIP, is a health care provider at SCIF and is / was the superintendent's assistant and grievance coordinator at SCIF and SCIP and had a duty of care to plaintiff as delineated in paragraph 29.
    12. Diane Manson was a health care provider at SCIP, is a licensed registered nurse and was the nurse supervisor at SCIP and had a duty of care to plaintiff as delineated in paragraph 29.
    13. Eugene Ginchereau was a health care provider at SCIP, is a licensed physician and was the medical director at SCIP and had a duty of care to plaintiff as delineated in paragraph 29.
    14. Edward Swierczewski, was a health care provider at SCIP, is a licensed physician and was the medical director at SCIP and had a duty to plaintiff as delineated in paragraph 29.
    15. Don Skunda was a healthcare provider at SCIP, is a licensed registered nurse and was a nurse supervisor at SCIP and had a duty of care to plaintiff as delineated in paragraph 29.
    16. Gary Gallucci was a healthcare provider at SCIP, is a health care provider at SCIF, is a licensed psychologist and was / is a psychologist at SCIP / SCIF and had a duty of care to plaintiff as delineated in paragraph 29.
    17. Jeffrey Bowden was a health care provider at SCIP, is a licensed psychologist and was a psychologist at SCIP and had a duty of care to plaintiff as delineated in paragraph 29.
    18. Robert Tretinik is a health care provider at SCIF, is a licensed registered nurse and is the health care administrator at SCIF and had a duty of care to plaintiff as delineated in paragraph 29.

19. Herbik, first name currently unknown, is a health care provider at SCIF, is a licensed physician and is the medical director at SCIF and had a duty of care to plaintiff as delineated in paragraph 29.

20. ASG Inc., American Service Group Inc., is a health care provider and parent company of PHS Inc. and had a duty of care to plaintiff as delineated in paragraph 29.

21. PHS Inc., Prison Health Services Inc., is a health care provider, an agency of ASG Inc. and the contracted medical service provider to SCIF and had a duty of care to plaintiff as delineated in paragraph 29.

22. WHS Inc., Wexford Health Sources Inc., is a health care provider, was the contracted medical service provider to SCIP and had a duty of care to plaintiff as delineated in paragraph 29.

23. David Yanak is a health care provider at SCIF, is a licensed psychiatrist and is a psychiatrist at SCIF and had a duty of care to plaintiff as delineated in paragraph 29.

24. Jane Doe, true name currently unknown, is a health care provider at SCIF, a licensed nurse and is a nurse at SCIF and had a duty of care to plaintiff as delineated in paragraph 29.

25. John Doe, true name unknown, is the district attorney of Bucks County, is a health care provider and had a duty of care to plaintiff as delineated in paragraph 29.

26. The Commonwealth of Pennsylvania is a political subdivision of the United States of America and is a separate entity from Commonwealth parties and had a duty of care to plaintiff as delineated in paragraph 29 and receives federal funds and is a health care provider.

27. The DOC, Pennsylvania Department of Corrections, is an administrative agency of the Commonwealth of Pennsylvania, is a health care provider and had a duty of care to plaintiff as delineated in paragraph 29 and receives federal funds.

28. Bucks County is a municipality of the Commonwealth of Pennsylvania, is a health care provider and had a duty of care to plaintiff as delineated in paragraph 29 and receives federal funds.

29. Each defendant had a duty of care to protect the health and safety of plaintiff and to provide him with medical services pursuant to the Constitutions and laws of the United States of America and the Commonwealth of Pennsylvania, provide plaintiff with reasonably requested medical services pursuant to 37 Pa. Code sec. 93.12 and to provide reasonable accomodations for his disability and not discriminate against him because of his disability under the ADA and RA and to protect plaintiff from harm from HCV and depression.

30. Each defendant is sued in his or her individual, professional and official capacity and at all times pertinent to this complaint each defendant acted under color of Pennsylvania law.

31. The address for the DOC is Pa. Dept. Of Corrections, 2520 Lisburn Rd., Camp Hill, Pa. 17001

32. The address for SCIP is P.O. Box 99901, Pittsburgh, Pa. 15233. It receives federal funds.

33. The address for SCIF is Box 9999, Labelle, Pa. 15450. It receives federal funds.

34. The address for WHS is Wexford Health Sources Inc., 381 Mansfield Avenue, Pittsburgh, Pa. 15220.

35. The address for the Bucks County District Attorney's Office is , Office of the District Attorney, 55 East Court St. Doylestown, Pa. 18901. It receives federal funds.

36. The address of the Pennsylvania Attorney General's Office is , Office of Attorney General, 564 Forbes Avenue, Pittsburgh, Pa. 15219.

38. The address for defendant PHS is Prison Health Services Inc., Millercraft Center, 90

West Chestnut St. Ste. 425 Washington, Pa. The phone number is ( 724 ) 222- 2094. An alternate address is 105 Westpark Dr. Ste. 200, Brentwood, Tn 37027. The phone number is ( 615 ) 373- 3100 or ( 800 ) 729-0069.

39. The address for defendant ASG is America Service Group Inc., 105 Westpark Dr. Ste 200, Brentwood, Tn 37027. The phone number is ( 615 ) 373-3100 or ( 800 ) 729- 0069.

FACTS

40. In April of 2003, plaintiff filed a petition for modification of sentence to be released from incarceration due to his serious illness, and inability to obtain necessary medical services for same, while incarcerated in the custody of the DOC. The aforesaid petition was filed in the Common Pleas Court of Bucks County and a hearing was subsequently scheduled for September 5, 2003.

41. In less than thirty days immediately preceding the hearing plaintiff became so ill that he lost approximately thirty pounds.

42. On the day of the hearing, September 5, 2003, defendant Commonwealth was represented by defendant Diaz and they and defendant DOC entered into a legal and binding contract with plaintiff wherein they agreed, on record, to furnish plaintiff with medical treatment which he requests for his illness if plaintiff withdraw his petition for modification of sentence.

43. Defendants DOC, Beard and Stickman were represented by defendants Talaber and Delie and they and defendants Commonwealth and Diaz guaranteed that plaintiff would receive medical services which he requests from a physician qualified and thoroughly experienced with HCV care and that his primary physician would be defendant Swierczewski and the health care provider defendant WHS and / or defendant PHS.

44. The contract also include that plaintiff would receive care which he requests for his illness and that the DOC HCV protocol's exclusionary criteria would not be utilized against him and that he does not have to fill out a BDI ( i.e., Beck Depression Inventory ) or sign any consent or waiver form or anything else to receive medical services he requests.

45. Plaintiff perfected his mandatory obligation pursuant to the terms of the contract by withdrawing his petition for modification of sentence on September 5, 2003.

46. Subsequently, defendants John Doe, WHS, PHS, Beard, Stickman, Ginchereau, Swierczewski, Scire, Manson, Skuunda, Bowden and Gallucci; were placed on notice of the contract.

47. However, neither they or defendants Talaber, DOC, Diaz, Delie, Commonwealth or Bucks County ensured that plaintiff's entitlements pursuant to the contract were entered into his medical or institutional records.

48. Plaintiff later made several requests for mediacl services for his illness while at SCIP and SCIF but they were denied despite the contract and right to receive accomodation.

49. Plaintiff's requests to be seen by a liver specialist were summarily denied by defendants.

50. Eventually plaintiff begun receiving some care in the form of antiviral drug therapy although the care was not adequate and not what plaintiff was requesting.

51. Plaintiff received the first injection of prescribed drug therapy on October 27, 2003 without his ever seeing, speaking to or communicating with any physician, including defendants Swierczewski and Ginchereau.

52. Many times plaintiff did not receive the prescribed daily antiviral capsules which significantly increased the probability of drug therapy faillure and further injury, harm, pain, and

suffering and greater risk of death to plaintiff.

53. Defendants WHS, Diaz, Talaber, Bucks County, Commonwealth, Beard, Stickman, John Doe, Swierczewski, Ginchereau, Manson, Bowden, DOC, Skunda and Scire were aware that deliberately initiating plaintiff on antiviral drug therapy without plaintiff first signing a waiver / consent form, filing out a BDI and completing a psychiatric evaluation was in direct violation of the DOC HCV protocol and placed plaintiff at substantial risk of serious harm from drug therapy side effects and despite this the defendants failed to implement any reasonable measures to abate said risk to plaintiff.

54. There was no informed medical judgement utilized by the defendants with regard to plaintiff's medical care.

55. In addition, when plaintiff would receive his medication the nurse would inform other inmates of plaintiff's condition / medication by announcing same loudly and in full hearing of them which resulted in other inmates throwing feces and urine on him spitting on him and threatening and taunting and torturing him.

56. On February 2, or February 3 of 2004 plaintiff was seen by a physician for the first time. Plaintiff was seen by defendants Jane Doe and Herbik and he informed them of the contract he had with defendants Commonwealth and DOC and he requested medical services and accomodation for his illness but his requests were denied pursuant to the custom, policy and practice of defendants Commonwealth, DOC, ASG and PHS to deny adequate medical services for plaintiff's illness.

57. Defendants Herbik and Doe apprised plaintiff that the contract was irrelevant because pursuant to DOC policy medical services for his illness must be denied as much as possible.

58. Defendants Herbik and Doe then informed plaintiff that his antiviral drug therapy injection time was changed by them in order to increase side effects and that if plaintiff complained about any side effects any and all medical services for his illness would be ceased pursuant to DOC policy.

59. Plaintiff informed defendants Scire, Mechling, Tretinick and Beard of the discriminatory and harmful actions against him but they condoned, supported and approved the actions against plaintiff.

60. On February 4, 2004, defendants Yanak and Gallucci appeared before plaintiff's door and loudly informed him, in full hearing of other inmates on that part of the unit, of his HCV condition and medication causing plaintiff to suffer severe mental anguish, pain, anxiety and emotional distress because the other inmates would increase their attempts to get plaintiff because of his illness.

61. Defendants Yanak and Gallucci attempted to force plaintiff to sign a Mental Health Informed Consent Document ( MHICD ), which is a waiver of his rights and agreement to be subjected to forced involuntary administration of psychotropic medication and mental heallth institution commitment, and to complete a BDI and they stated to plaintiff that if he did not sign the MHICD and complete the BDI then they would just let him suffer and die.

62. Plaintiff apprised defendants Yanak and Gallucci that their actions were inappropriate and a violation of law and that plaintiff was not required to sign any MHICD or complete a BDI or psychiatric evaluation because of his contract with defendants commonwealth, DOC, Beard and others which could be verified by contacting defendants Talaber, Delie, WHS, Swierczewski, Beard or by reviewing his medical records.

63. However, defendants Yanak and Gallucci stated to plaintiff that, inter alia, they did

not care about any contract and that they were going to teach plaintiff a lesson and cut all HCV care to him because he should never have received any care and deserves to die for refusing to follow the DOC protocol.

64. Plaintiff informed defendants Beard, Scire, Tretinik, PHS, ASG, Mechling, Commonwealth, DOC and Herbik of the actions against him by defendants Yanak and Gallucci but they condoned, supported and approved of the actions against plaintiff because of DOC policy and pursuant to the DOC HCV protocol.

65. The actions of defendants Yanak and Gallucci caused plaintiff severe mental anguish, anxiety and emotional distress because other inmates again started or renewed their attacks against plaintiff because of his illness.

66. Approximately on February 12, 2004, all medication current and future medication for HCV to plaintiff was halted causing plaintiff to suffer severe depression, mental anguish, anxiety and emotional distress which defendants Herbik, PHS, ASG, Beard, Scire, Gallucci and Yanak also refused to provide any care for.

67. There was no informed medical judgement utilized in the intentional denial of care to plaintiff.

68. Defendants Commonwealth, John Doe, DOC, Beard, Talaber, Mechling, Scire, Diaz, Bucks County, Herbik, Tretinik, PHS and ASG were placed on notice of the intentional denial of necessary medical services to plaintiff but they approved, condoned or supported the denial of medical services to plaintiff based on DOC policy and DOC HCV protocol.

69. Each of the defendants, including defendants Yanak and Gallucci, were aware that the denial of care to plaintiff for his illness placed him at substantial risk of harm and they intentionally failed to implement any reasonable measures to abate said risk to plaintiff and there was no informed medical judgement utilized in the denial of care to plaintiff.

70. The symptoms which plaintiff suffers from because of his illness include, but are not limited to: Ongoing liver injury, nausea, vomiting, abdominal pain, debilitating chronic fatigue and weakness, mental confusion, memory loss, serious weight loss, severe muscle and joint pains, dizziness, severe migraine headaches, insomnia and hypersomnia.

71. As a result of the defendants actions against him, plaintiff's symptoms have been aggravated causing him great pain and suffering and severe mental anguish and emotional distress and his probability of deteriorating health, further pain and suffering and death have been very much increased.

72. Defendants Beard, Mechling, Scire, Yanak, Herbik, PHS, Gallucci and Tretinik have refused to provide plaintiff with any care for his mental health injuries.

73. As a result of the defendants' actions against plaintiff the success of any possible future care for his illness has been decreased and the approximately four painful months that plaintiff did receive antiviral drug therapy must be repeated which substantially increases plaintiff's risk of suffering serious harm or death from drug therapy side effects.

74. Each defendant has a pattern, practice, policy or custom of denying adequate medical services for HCV to incarcerated citizens with HCV.

75. Each defendant had a duty to protect plaintiff from harm from depression and other mental health disorders.

76. Each defendant had a duty to protect plaintiff from suffering harm from his HCV condition.

77. The DOC HCV protocol discriminates against persons with HCV because there is no

similar protocol for other medical conditions despite their using the same drug therapy and the defendants simply use the protocol to deny adequate care for HCV.

78. The DOC HCV protocol is in accord with the current community standards of care for HCV according to each defendant.

79. The DOC HCV protocol is not in accord with the current community standards of care for HCV according to each defendant.

80. Each defendant had a duty to plaintiff to provide him with care for his illness in accord with the reasonable skill and diligence ordinarily employed by medical practitioners with respect to HCV care. Each defendant failed his / her duty to plaintiff.

81. Defendants Commonwealth, DOC, PHS, WHS, ASG, Bucks County, John Doe, Tretinik, Mechling and Scire failed to train and / or supervise their subordinates concerning plaintiff's care for his illness.

82. Each defendant utilized criteria or methods of administration of HCV care that have the effect of defeating or substantially impairing the accomplishment of providing adequate medical care for HCV.

83. The conduct of defendants, including Herbik, Swierczewski and Ginchereau, fell below the standards of reasonable medical practice and proximately caused plaintiff to suffer harm. They deviated from the acceptable medical standard and their deviation was and is a substantial factor in causing harm to plaintiff.

84. At all times each defendant acted in a willful, negligent, maliscious, reckless, outrageous and / or deliberate manner.

85. The harm and risks of harm to plaintiff were highly predictable and plainly obvious by and to defendants.

86. Each defendant had a policy and / or custom of allowing unqualified persons to make medical treatment decisions and / or mental health care dicisions which resulted in harm to plaintiff.

87. The defendants' actions were done conspiratorially pursuant to the general policy, practice or custom of denying adequate medical care for HCV as much as possible and the defendants applied their policy to plaintiff, furthered their conspiracy by denying care to plaintiff and caused him harm.

88. The defendants' actions were performed in retaliation for plaintiff's filing petition in criminal court.

89. The defendants' actions were performed in retaliation for his obtaining medical services for his illness.

90. The defendants' actions were performed in retaliation for plaintiff's filing grievances and legal actions concerning denial of care for his illness by defendants and / or their agents.

91. The medical and mental health services which defendants rendered to plaintiff were below the standard of reasonable medical and mental health practice.

92. The defendants did not exercise ordinary skill, care and diligence when rendering medical and mental health services to plaintiff.

93. Plaintiff has yet to receive any notice or hearing concerning the unlawful confiscation of his medical services entitlements.

94. Because of the seriousness of his illness and immediate need of medical services plaintiff drafted this complaint as fast as he could but he is currently unable to draft this complaint to an adequate level because of his illness and lack of access to his medical records and other

necessary documents and lack of access to adequate legal reference material.

95. The actions of defendants discriminated against plaintiff because of his illness.

CAUSES OF ACTION:

96. Plaintiff supports but is not limited to, the following claims by reference to the previous paragraphs of this complaint.

COUNT 1:

97. The actions of defendants violated the ADA and RA when they discriminated against plaintiff because of his HCV condition.

COUNT 2:

98. The actions of defendants violated the First Amendment when they retaliated against plaintiff for filing legal actions and grievances.

COUNT 3:

99. The actions of defendants violated the First Amendment when they retaliated against plaintiff for obtaining medical services for his illness.

COUNT 4:

100. The actions of defendants violated plaintiff's constitutional right to medical and mental health privacy when they divulged his medical and mental health data to others.

COUNT 5:

101. The defendants' actions violated the First Amendment when they retaliated against plaintiff for refusing to provide his signature and waive his rights and his refusing to fill out the BDI

COUNT 6:

102. The defendants violated the Eighth Amendment when they did not utilize adequate or proper medical recordkeeping regarding plaintiff's drug therapy.

COUNT 7:

103. The defendants violated the Eighth Amendment when they initiated plaintiff on antiviral drug therapy.

COUNT 8:

104. The defendants violated the Eighth Amendment when they interfered with and stopped plaintiff's antiviral drug therapy.

COUNT 9:

105. The defendants violated the Eighth Amendment when they utilized an inadequate medical care policy and custom against plaintiff.

COUNT 10:

106. The actions of defendants violated equal protection when they discriminated against plaintiff because of his illness.

COUNT 11:

107. The defendants violated plaintiff's right to due process when they did not provide him with notice and hearing.

COUNT 12:

108. The defendants violated 42 U.S.C. sec. 1983 when they violated plaintiff's rights.

COUNT 13:

109. The defendants violated 42 U.S.C. sec. 1985 when they conspired against plaintiff.

COUNT 14:

110. The defendants violated 42 U.S.C. sec. 1986 when they did nothing about the conspiracy against plaintiff.

COUNT 15:

111. The actions of defendants constitute breach of contract.

COUNT 16:

112. The actions of defendants constitute gross negligence and negligence.

COUNT 17:

113. The actions of defendants constitute medical and / or professional malpractice.

COUNT 18:

114. The actions of defendants constitute intentional infliction of mental anguish and emotional distress.

COUNT 19:

115. The actions of defendants constitute misfeasance, nonfeasance and malfeasance.

COUNT 20:

116. The actions of defendants constitute invasion of privacy.

COUNT 21:

117. The actions of defendants constitute outrageous conduct.

COUNT 22:

118. The actions of defendants constitute assault.

COUNT 23:

119. The actions of defendants constitute battery.

COUNT 24:

120. The defendants violated the Eighth Amendment when they denied mental health care to plaintiff.

EQUITY:

121. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been irreparably harmed by the conduct of the defendants and their agents and will continue to be so harmed unless the court grants the relief which he seeks.

REQUESTED RELIEF:

Wherefore, plaintiff respectfully prays that the court :

    A. Declare that the acts and omissions described herein and complained of violated plaintiff's right under the Constitutions and laws of the United States of America and Commonwealth of Pennsylvania.

    B. Enter preliminary and permanent injunctions ordering defendants and their successors, agents, employees and all persons acting in concert with them to ensure that plaintiff is furnished with medical services which he requests concerning his illness ( HCV ) to administer any injections regarding his illness in a private manner approved by plaintiff, to cease informing others of plaintiff's private medical data and to document and provide reasonable accomodations requested by plaintiff because of his illness ( disability ).

    C. Enter judgement in favor of plaintiff for nominal, compensatory and punitive damages against each defendant, jointly and severally.

    D. Grant plaintiff costs of this action from defendants.

    E. Order such additional relief as the court deems just, proper or equitable.

SIGNATURE :

Respectfully submitted this _____14th_____ day of _____April_____ 2004

_____
Charles Iseley
AM- 9320, BOX 9999
LABELLE, PA. 15450


VERIFICATION:

    Pursuant to 28 U.S.C. sec. 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and information.

DATE: _April 14, 2004_           _____
                                                               Charles Iseley

cn

```
Wed Apr 21 14:31:42 2004

    UNITED STATES DISTRICT COURT

    SCRANTON      , PA

Receipt No.    111 140778
Cashier           jill

Check Number:  1187

DØ Code    Div No
 4667        1

Sub Acct Type Tender      Amount
0:510000  N     2          90.00
1:086900  N     2          60.00

Total Amount       $      150.00
```

ISABELITA ISELEY 711 WINDER DR. BRI
STØL, PA 19007

FILING FEE FOR COMPLAINT IN CV-04-8
61

cn