NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2540

CHARLES ISELEY,
                Appellant

v.

JOHN TALABER; JEFFREY BEARD; WILLIAM STICKMAN;
NEAL MECHLING; PHS INC; WHS INC; ASG INC; JOAN DELIE;
EDWARD SWIERCZEWSKI; CAROL A. SCIRE, Grievance Coordinator;
DIANE MANSON; DON SKUNDA; EUGENE GINCHEREAU;
ROBERT TRETINIK; HERBIK; GARY GALLUCCI; JOHN DOE;
JEFFREY BOWDEN; JANE DOE; DAVID YANAK; BUCKS COUNTY;
DOC; COMMONWEALTH OF PENNSYLVANIA; KAREN DIAZ

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 04-cv-00861
(Honorable Yvette Kane)

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 18, 2007

Before: SCIRICA, Chief Judge, FUENTES and SMITH, Circuit Judges

(Filed: May 23, 2007)

OPINION OF THE COURT

PER CURIAM.

Appellant Charles Iseley, a Pennsylvania inmate, was diagnosed with Hepatitis-C ("HCV") in 1998. In 2000, Iseley filed a civil rights action under 42 U.S.C. § 1983 in United States District Court for the Eastern District of Pennsylvania at D.C. Civ. No. 00-cv-04839, alleging that the failure of the Commonwealth Department of Corrections ("DOC") to offer him treatment for HCV constituted cruel and unusual punishment in violation of the Eighth Amendment. He also alleged that he was denied medical care in retaliation for having filed grievances and lawsuits against corrections staff. After the DOC changed its policy on HCV treatment, Iseley moved for a preliminary injunction to force the DOC to provide him with prescription drug treatment; however, Iseley would not consent to psychological testing and limited disclosure as required by the DOC's treatment protocols. The District Court granted summary judgment to the defendants and we affirmed in Iseley v. Dragovich, 90 Fed. Appx. 577, 582 (3d Cir. January 6, 2004) (nonprecedential opinion).

In 2002, while incarcerated at the State Correctional Institution at Greene ("SCI-Greene"), Iseley again attempted to get treatment for his HCV. He requested pegylated interferon, a drug for the treatment of HCV, but was refused. Prison officials informed him that interferon, a different HCV drug, was the only treatment that would be available to him. Again, however, Iseley refused to consent to psychological counseling and disclosure of his medical records as required for treatment with interferon, and so he was denied treatment. Medical personnel also informed counselors, prison guards and other prisoners that Iseley suffered from HCV.

Aggrieved by these decisions, in October 2002, Iseley filed another civil rights action, this time in United States District Court for the Western District of Pennsylvania at D.C. Civ. No. 02-cv-01709. Iseley sued Commonwealth defendants as well as the medical provider at SCI-Greene and its employees and officers, alleging, in pertinent part, that prison authorities and doctors failed to treat his HCV in violation of the Eighth and Fourteenth Amendments, the medical defendants' release of information regarding his HCV status violated his right to privacy, and the refusal to treat his HCV was in retaliation for his failure to consent to psychological treatment and disclosure of his medical information. Iseley also alleged that the defendants had breached a contract. The District Court granted summary judgment to the defendants and we affirmed in <u>Iseley v. Beard</u>, 200 Fed. Appx. 137 (3d Cir. October 3, 2006) (nonprecedential opinion). In a footnote, we rejected the Commonwealth's argument that Iseley was collaterally estopped from bringing these claims, but we did so on the ground that the Commonwealth had failed to raise the defense in the district court in the first instance. <u>Id.</u> at 142 n.5.

In April 2004, Iseley filed the instant civil rights action in United States District Court for the Middle District of Pennsylvania. Again he contended that he has not received adequate medical treatment for his HCV condition, including antiviral drug therapy. In addition to seeking money damages, Iseley sought an order directing the defendants to provide medical treatment for his Hepatitis C without a psychological evaluation. The Commonwealth defendants moved to dismiss the complaint, contending that, in the prior Eastern District case, Iseley also alleged deliberate indifference to his

3

Hepatitis C condition. He was therefore precluded from re-litigating the issues already decided in that case. The remaining defendants also filed motions to dismiss or for summary judgment.

In an order entered on March 31, 2005, the District Court granted these motions and dismissed the complaint. Pursuant to Witkowski v. Welch, 173 F.3d 192, 199 (3d Cir. 1999), four factors must be present for the doctrine of collateral estoppel to apply: (1) the issue decided in the prior action must be identical to the one presented in the later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. The District Court reasoned that all four of these factors were met. In both actions Iseley claimed that the defendants were deliberately indifferent to his serious medical need for HCV treatment. In both actions the issue for decision, factor (1), was whether a denial of treatment that was based on a refusal to consent to the requisite screening violated the Eighth Amendment if the regulation at issue was reasonably related to legitimate penological interests.[1] Factors (2)-(4) also plainly were satisfied, and Iseley's privacy rights violation claim could not be maintained against a

---

[1] Iseley claimed that the defendants violated his rights under the Americans with Disabilities Act and the Rehabilitation Act, and that the defendants had breached a contract and violated his right to privacy. Nevertheless, the pivotal claim was the Eighth Amendment deliberate indifference claim.

4

Jane Doe defendant.  The District Court denied a timely motion for reconsideration in an order entered on March 31, 2006.  Iseley appeals.

We will affirm.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  The general rule is that we exercise plenary review of a decision to apply collateral estoppel.  See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 248 (3d Cir. 2006).  Issue preclusion, or collateral estoppel, bars relitigation of issues adjudicated in a prior action.  The policy behind the doctrine is that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise."  Swineford v. Snyder County Pennsylvania, 15 F.3d 1258, 1266 (3d Cir. 1994) (quoting Astoria Federal Savings & Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991)).

As explained by the District Court, factors (2)-(4) plainly are satisfied.  Iseley was the plaintiff in the prior actions, he had a full and fair opportunity to litigate the issue or issues, and twice there have been decisions on the merits.  As to factor (1), the issues in the instant action are identical not only to those in the prior Eastern District action, but also to those in the prior Western District action, all of which is plain from the respective prior District Court decisions and our two prior nonprecedential decisions, Iseley v. Dragovich, 90 Fed. Appx. 577, and Iseley v. Beard, 200 Fed. Appx. 137.  In Dragovich, we held that the defendants did not act with deliberate indifference by not allowing Iseley to participate in the Hepatitis C protocol in 2000 and that he was not denied medical care in retaliation for having filed grievances and lawsuits against prison officials.  In Beard,

5

we held that conditioning interferon treatment for Hepatitis-C (HCV) on Iseley's consent to the release of his medical records and concomitant psychological treatment was not an Eighth Amendment violation, and that the non-medical defendants did not violate the Eighth Amendment by failing to act to secure him the proper treatment.

In short, Iseley seeks treatment for his Hepatitis C from the Department of Corrections, but on his own terms. The fundamental facts and issues for decision are the same.[2] Under both the January 2000 and January 2002 protocols, the inmate has to be

---

[2]To illustrate, in <u>Beard</u> we stated:

> Iseley's claim that he was denied treatment for HCV is, based on his own admissions, not true. Rather, he refused interferon treatment because he would not consent to the release of his medical records and concomitant psychological treatment as required by DOC [Department of Corrections] policy. Iseley claims that psychological treatment was not necessary for interferon treatment and that prison authorities' insistence that he submit to counseling forces him to either suffer the imposition of unwanted treatment, or be denied treatment for a serious medical condition. He has raised this argument before, *see Dragovich*, 90 Fed. Appx. at 580 n.3, and we found it unpersuasive. It is still unpersuasive. The DOC's requirement that prisoners undergoing interferon treatment submit to psychological evaluation and treatment is a reasonable inclusion in the HCV drug treatment protocol. According to Iseley's own materials, side effects of interferon include severe depression and suicidal thoughts. Because of these side effects, the DOC protocols for HCV treatment exclude those suffering depression, psychosis, bipolar disorder from interferon treatment. The inclusion of psychological evaluation and counseling in the DOC's treatment protocol is an exercise of sound medical judgment; not, as Iseley contends, an instance where necessary medical treatment has been delayed or denied for a non-medical reason. Iseley has a different opinion about the matter and has refused to participate in treatment, but the Commonwealth Defendants cannot be held responsible for his unwillingness to comply with a legitimate treatment protocol.

(continued...)

6

psychologically screened. Iseley will not participate in the psychological screening required by the protocols, for which reason he has not been treated. He cannot now relitigate these issues against a slightly different group of identically situated defendants. In applying collateral estoppel to this, his third, lawsuit, we make clear that each passing day in which he is incarcerated is *not* a new event or new denial of treatment which he may litigate so long as he can continue to identify new personnel to name as defendants. This is precisely the outcome the collateral estoppel doctrine was intended to prevent.

We will affirm the order of the District Court dismissing the complaint. Iseley's motion for leave to file supplemental reply briefs is denied. The medical appellees' request to remand this matter to the District Court for consideration of an order barring Iseley from further litigating any issues concerning the Hepatitis C protocol, a request that was made in their brief, is denied.

---

²(...continued)
200 Fed. Appx. at 141-42 (footnotes and citations omitted).